WEST MADISON INVESTMENT COMPANY v FILECCIA

1. DEEDS—WARRANTY DEEDS—VENDOR AND PURCHASER—ENCUM-
    BRANCES—MORTGAGES—BREACH OF WARRANTY.

    Encumbrances created, induced, or suffered by the purchaser
    under a contract of sale cannot be urged by him as an objection
    to the title nor do they constitute a breach of the warranty in
    the vendor's deed; thus a purchaser of real estate who was
    aware at the time of the purchase of a second mortgage against
    the property, payment of which was being disputed by the
    seller, and of the existence of an escrow account by means of
    which the seller was ready to cover any obligation under that
    mortgage, cannot later complain that the existence of the
    mortgage constituted a breach of warranty.

2. CONTRACTS—INTENTION OF PARTIES—SEPARATE INSTRUMENTS—SIN-
    GLE TRANSACTION.

    Separate instruments executed at about the same time, in rela-
    tion to the same matter, between the same parties, and made
    as elements of one transaction may be examined together and
    construed as one instrument in order to determine the inten-
    tion of the parties to an agreement.

3. VENDOR AND PURCHASER—EVIDENCE—PAROL EVIDENCE—DEEDS—
    WARRANTY DEEDS—ENCUMBRANCES—BREACH OF WARRANTY.

    Parol evidence is admissible to show that a plaintiff purchaser of
    real estate knew of the existence of a second mortgage on the
    property and agreed to purchase the property if an escrow
    account to discharge the sellers' liability on that mortgage were
    established, where the purchasers subsequently sought to re-
    cover damages from the seller for breach of warranty.

4. VENDOR AND PURCHASER—ENCUMBRANCES—WARRANTY—WAIVER.

    A plaintiff purchaser, party to the creation and execution of an
    encumbrance as a condition to his purchase of real estate, has

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 55 Am Jur, Vendor and Purchaser § 225 et seq.
[2] 17 Am Jur 2d, Contracts §§ 1–3, 18–30.
[3] 55 Am Jur, Vendor and Purchaser § 98.

waived his right to insist upon a conveyance of the property free of that particular encumbrance.

Appeal from Washtenaw, Edward D. Deake, J. Submitted Division 2 December 10, 1974, at Lansing. (Docket No. 18850.) Decided January 28, 1975.

Complaint by West Madison Investment Company against Nicholas and Antoinette Fileccia and Angelo and Josephine Fileccia for breach of warranty. Judgment for plaintiff. Defendants appeal, and plaintiff cross-appeals. Reversed and remanded.

*Conlin, Conlin, McKenney & Meader* (by *Allen J. Philbrick),* for plaintiff.

*Crippen, Dever, Urquhart & Cmejrek,* for defendants.

Before: DANHOF, P. J., and BASHARA and ALLEN, JJ.

ALLEN, J. Defendants have appealed from the trial court's opinion and judgment rendered in plaintiff's behalf, in which the trial court found that defendants had breached a warranty against encumbrances, and in which plaintiff was awarded $3,000 damages. Plaintiff cross-appeals and seeks an increase in damages to $6,000. GCR 1963, 807.1 On May 1, 1967, defendants conveyed to plaintiff, a co-partnership consisting of James C. Holmes and Patrick J. Pulte, by warranty deed, a certain apartment house located in Ann Arbor. The warranty deed recited that the property was subject to a mortgage which grantors had given to Ann Arbor Federal Savings & Loan Association December 30, 1965. That mortgage was recorded,

and plaintiff assumed and agreed to pay the mortgage.

However, the warranty deed failed to recognize the existence of a second mortgage in the amount of $9,000, given to Newton Realty Company on December 31, 1965, to secure a note payable to Newton Realty Company as a commission for the latter's part in the transaction in which defendants had purchased the apartment house from another party. However, plaintiff's agent and Patrick Pulte, one of plaintiff's partners, specifically testified that they were aware of the second mortgage. In fact, in a letter dated May 3, 1967, defendants' attorney advised plaintiff that Angelo Fileccia had established an escrow account in the amount of $12,000 payable to Huron Title Company. Huron Title Company was apparently the title company organized in defendants' attorney's law office. According to the letter, Huron Title Company would use as much of the $12,000 as necessary to satisfy any judgment which Newton Realty Company might acquire in its litigation with the Fileccia brothers. As stated in the letter:

"Huron Title Company will take the responsibility of securing the discharge of the existing mortgage on the West Madison Street property which was given by Fileccia brothers to Newton Realty to secure a promissory note of $9,000."

When defendants purchased the building in December 1965, they never realized the amount of income which Newton allegedly had represented to them, and refused to pay the $9,000 note when it came due. Newton, in turn, filed suit, and Fileccia counterclaimed on the grounds of fraudulent misrepresentation. See *Newton Realty Co v Fileccia,* 20 Mich App 674; 174 NW2d 603 (1969). Compare,

*Head v Benjamin Rich Realty Co,* 55 Mich App 348, 351, 358; 222 NW2d 237, 239, 243 (1974). Our Court reversed the trial court's award of damages as far as Fileccia's claim was concerned, and remanded for the trial court to make a redetermination on this question. 20 Mich App 674, 678. Upon remand, the trial court used another method of computing Fileccia's loss, and in an opinion of October 24, 1972, found that Fileccia was entitled to $984 as a set-off against Newton's claim on the note. Fileccia's application for leave to appeal was denied in our Court January 23, 1974, Docket No. 17104, and the Michigan Supreme Court denied their application for leave to appeal on May 1, 1974. 391 Mich 821. At oral argument, it was disclosed that the parties to this dispute are engaged in the process of satisfying the judgment and discharging the Newton mortgage.

In connection with the above litigation, Angelo Fileccia sought the assistance of Duncan Robertson, a real estate broker and appraiser, and wanted Robertson to testify as an expert witness in the trial. In the course of their discussion, Robertson, West Madison Investment Company's agent, learned of the nature of the litigation and of the existence of the second mortgage. He then told Fileccia that he thought he had a client who was looking for a place to hide money and who might be interested in purchasing. Subsequently, their negotiations led to the May 1, 1967 conveyance in which plaintiff purchased the property for $235,000. Plaintiff concedes on the record that at the time of the purchase it had full knowledge of the escrow agreement and the then ongoing litigation.

Some three and a half years later, plaintiff, then in need of cash, sought to sell the property to a

person named Pierce, who was in the process of establishing a partnership or a corporation. January 20, 1971, West Madison and Pierce signed a sales agreement for $250,000, of which $40,000 would be a down payment, with the balance to be paid in monthly installments. Closing was to occur March 20, 1971 or 15 days after seller produced good title. However, at the closing held April 16, 1971, Pierce's attorney objected to the presence of the second mortgage, stating his clients would pay only $244,000, a reduction of $6,000, due directly to the presence of the Newton Realty encumbrance. Pierce's attorney felt that title was not marketable; in fact the parties at this trial stipulated that Pierce and his attorney, if they had testified, would have said that the price was reduced by $6,000 at closing "due to their objection to the status of the title".

Plaintiff then filed its complaint against Fileccia brothers, and sought $6,000 in damages. The trial court noted that the May 3, 1967 letter regarding the escrow agreement was vague as to when the second mortgage would be discharged, discussed the possibility of delay in resolving the Newton-Fileccia dispute, and said that there was a present cloud on the marketability of title to the property at issue. Although the court subsequently determined that plaintiff was entitled to recover $3,000 in damages, our resolution of this case makes it unnecessary for us to consider the propriety thereof.

Basically, the problem before us is whether the second mortgage, based upon the Newton-Fileccia debt, was an encumbrance breaching the warranty of title when the parties to the instant transaction had simultaneously escrowed in writing sufficient money to cover any liability growing out of the Newton-Fileccia dispute. We find that the trial

court erred in finding that there had been a breach of warranty.

Plaintiff negotiated with defendants and obtained the agreement that defendants would assume the obligation to discharge, by way of escrow account, any obligation they may owe to Newton Realty Company. As noted in *Maser v Gibbons,* 280 Mich 621, 626–627; 274 NW 352, 354 (1937):

"The applicable principle is thus stated in 66 CJ p 907:

'Incumbrances created, induced, or suffered by the purchaser under a contract of sale cannot be urged by him as an objection to the title, nor do they constitute a breach of the warranty in the vendor's deed given in pursuance of the contract of sale.'

"The rule would apply to an assignee or agent of vendee."

See also 92 CJS, Vendor and Purchaser, § 217, pp 81–82.

Plaintiff relied upon the escrow agreement and was in fact induced to purchase defendants' property by the execution of that agreement. Plaintiff, admittedly in need of funds in early 1971, cannot now complain that the presence of the Newton mortgage constituted a breach of warranty. The fact that Pierce's attorney at the closing date took advantage of plaintiff's need for cash is not the fault of defendants who stood ready at all times to cover any obligation which might be found due under the second mortgage.

Further, we agree with the trial court that plaintiff's reliance upon *Edwards v Clark,* 83 Mich 246; 47 NW 112 (1890), is misplaced, and that *Edwards* does not preclude the admission into evidence of the May 3, 1967 letter from Crippen

[defendant's attorney] to plaintiff and the consideration by the court of that letter as well as the warranty deed. *Edwards* noted that in Michigan, parol evidence is generally inadmissible "in an action upon covenants to show that an existing incumbrance was to be regarded in fact as no incumbrance". 83 Mich 246, 249. In the instant case, such is not the purpose of admitting the letter, and its admission is governed by *Nogaj v Nogaj,* 352 Mich 223, 231; 89 NW2d 513 (1958), wherein the court referred to the general rule that in order to determine the intention of the parties, separate instruments executed at about the same time, in relation to the same matter and between the same parties and made as elements of one transaction may be examined together and construed as one instrument. See 23 Am Jur 2d, Deeds, § 172, p 218, and 26 CJS, Deeds, § 91, pp 840–841. In the instant case, the May 3, 1967 letter was properly admitted and considered by the trial court as evidence of the entire transaction. As noted earlier, testimony was received which indicated that plaintiff and its agent knew of the existence of the second mortgage and agreed to purchase the property in exchange for defendants' use of the escrow account to discharge their liability to Newton Realty Company.

Among other cases, plaintiff relies upon *Lavey v Graessle,* 245 Mich 681, 684; 224 NW 436 (1929), for the assertion that such parol evidence was inadmissible, and that plaintiff's knowledge of the existing Newton mortgage was irrelevant. *Lavey* relied upon *Edwards v Clark, supra,* which we have previously distinguished. Also, it should be noted that *Lavey* has been further distinguished in *Stewart v Meyers,* 353 F2d 691, 695, fn 2 (CA 7, 1965). The court there said that *Lavey* was prem-

ised upon the proposition that the parol evidence at issue was inadmissible "to alter the covenants of warranty in a deed". *Stewart* also noted that the encumbrance involved in *Lavey,* was not one created at the instance and with the knowledge of the complaining party, but was rather already in existence previous to the transaction. Finally, the parol evidence was not employed in *Stewart,* as it was in *Lavey,* to vary any of the provisions of the contract. 353 F2d 691, 695, fn 2. *Stewart* held that a plaintiff-vendee, party to the creation and execution of an encumbrance as a condition to his purchase of the real estate, had waived his right to insist upon a conveyance of the property free of that particular encumbrance. 353 F2d 691, 695.

Our resolution of this case makes it unnecessary to decide the issue of damages, and consequently plaintiff's cross-appeal is dismissed.

Reversed and remanded, with judgment to enter in defendants' behalf. Costs to defendants.